**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ALEJANDRO MARTINEZ and
ALICIA SOSA DE MARTINEZ

        Plaintiffs,                              CASE NO. 06-14264
                                                      HON. LAWRENCE P. ZATKOFF
v.

DEPARTMENT OF HOMELAND
SECURITY,

        Defendant.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on June 14, 2007

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court upon Defendant's Motion to Dismiss (Docket #5) and Plaintiff's Motion for Summary Judgment (Docket #9).[1] The parties have attached exhibits in support of each motion and both motions have been fully briefed. The Court finds that the facts and legal arguments are adequately presented in the parties' papers and the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. MICH. LR 7.1(e)(2), it is hereby

---

[1] Although Alicia Sosa De Martinez is listed as a plaintiff in this case, the complaint does not contain any legal allegations concerning Ms. Martinez. Further, Ms. Martinez was not a party to any of the adverse rulings being contested in this case. Accordingly, the Court finds that Alejandro Martinez is the only proper plaintiff in this case. Therefore, when the Court refers to Plaintiff, it is referring to Alejandro Martinez only.

ORDERED that the motion be resolved on the briefs submitted. For the following reasons, Defendant's Motion to Dismiss will be GRANTED and Plaintiff's Motion for Summary Judgment will be DENIED.

## II. BACKGROUND

The following facts are drawn from Plaintiff's complaint or construed in the light most favorable to Plaintiff. This case arises from an adverse determination on Plaintiff's Application to Register for Permanent Residence or Adjust Status. Plaintiff Alejandro Martinez is a citizen of Mexico and a Michigan resident. Plaintiff's mother, Sosa De Martinez is a citizen of Mexico, a resident of Michigan, and a lawful permanent resident of the United States.

Plaintiff was a derivative beneficiary of his mother's visa petition with a priority date of December 4, 1995. Based on this priority date, a visa became available to Plaintiff's mother on July 1, 2003. In 2004, Plaintiff and his mother took steps to apply for an immigrant visa, including contacting an immigration lawyer in Mexico. On August 11, 2004, Plaintiff's mother applied for an immigrant visa on behalf of herself, as the principle beneficiary, and Plaintiff, as the derivative beneficiary, using a form DS-230 "Application for Immigrant Visa and Alien Registration." At this time, Plaintiff was nineteen years old, having been born on October 8, 1983. As a part of the application process, the United States consulate scheduled an interview with Plaintiff and his mother for October 13, 2004. However, neither Plaintiff nor his mother appeared for this interview and they did not pursue the visa application any further. Plaintiff turned twenty-one on October 8, 2004.

Having not been approved for an immigrant visa based on the August 11, 2004, application, Plaintiff's mother filed a second Form DS-230 on June 2, 2005. An interview was scheduled for June 23, 2005. This time Plaintiff's mother was granted permanent resident status. In contrast,

2

Plaintiff's application was denied because he was no longer a child as defined in the Immigration and Naturalization Act, and was no longer qualified as the derivative beneficiary of his mother's application. When Plaintiff turned twenty-one he lost the benefit of his mother's "preference (A) visa," with a priority date of December 4, 1995, and converted his priority to a "preference (B) visa," with a priority date of January 1, 1991. The effect was to move Plaintiff to the back of the line for available visas.

As a result of being denied permanent resident status as a derivative beneficiary of his mother, on September 2, 2005, Plaintiff filed a Form I-485 "Application to Register for Permanent Resident Status or Adjust Status," on his own behalf. To be eligible for an adjustment of status, Plaintiff had to show that an immigrant visa was immediately available to him on the date he filed the Form I-485. Because Plaintiff was, upon turning twenty-one, converted to a lower visa preference category, an immigrant visa was not available for him as of September 2, 2005. Accordingly, the district director of the Citizenship and Immigration Service (CIS) denied Plaintiff's application on this basis.[2] Plaintiff then moved to reopen the district director's decision on April 16, 2006, which was denied for the same reason as his original application.

Plaintiff filed the instant action on September 27, 2006, in which he asks the Court to vacate the district director's decision to deny his application for adjustment of status because he alleges the district director incorrectly determined that a visa was not immediately available on September 2, 2005. Plaintiff bases this claim on the Child Status Protection Act (CSPA), Pub. L. No. 107-208, 116

---

[2]Along with his application for adjustment of status, Plaintiff filed a Form I-765 "Application for Employment Authorization." This application was denied because the denial of Plaintiff's application for adjustment of status rendered him ineligible for employment authorization.

3

Stat. 927 (2002), codified at 8 U.S.C. § 1253(h)(1)(A)-(B), which amended the Immigration and Naturalization Act (INA), 8 U.S.C. §§ 1101 *et seq*. Defendant has filed a motion to dismiss Plaintiff's complaint for lack of subject matter jurisdiction under FED. R. CIV. P. 12(b)(1), and for failure to state a claim upon which relief can be granted under FED. R. CIV. P. 12(b)(6).

## III. LEGAL STANDARD

A motion challenging the basis for the Court's subject matter jurisdiction is brought under FED. R. CIV. P. 12(b)(1). "When subject matter jurisdiction is challenged under Rule 12(b)(1) ... the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986). A Rule 12(b)(1) motion to dismiss will be grated only if, taking as true all facts alleged by the plaintiff, the court is without subject matter jurisdiction to hear the claim. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

A motion brought pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief may be granted tests the legal sufficiency of Plaintiff's claims. The Court must accept as true all factual allegations in the pleadings, and any ambiguities must be resolved in Plaintiff's favor. *Jackson v. Richards Med. Co.*, 961 F.2d 575, 577-78 (6th Cir. 1992). The Court may properly grant a motion to dismiss when no set of facts exists that would allow Plaintiff to recover. *Carter by Carter v. Cornwall*, 983 F.2d 52, 54 (6th Cir. 1993).

## IV. ANALYSIS

### A. Subject Matter Jurisdiction

Plaintiff asserts the Court has jurisdiction based on the Administrative Procedures Act (APA), 5 U.S.C. § 702, in conjunction with the CSPA. Defendant argues that the APA does not provide jurisdiction where the decision being challenged has been committed by law to the agency's

4

discretion. Defendant contends that since the INA expressly commits the decision to adjust an immigrant's status to the discretion of the Attorney General, the APA does not provide jurisdiction over this case.

Section 702 of the APA states that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. Further, the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law ...." 5 U.S.C. § 706(2). However, the APA does not provide a basis for jurisdiction to the extent that "statutes preclude judicial review" or "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a).

Defendant contends that § 1252(a)(2)(B)(i) of the INA deprives the Court of subject matter jurisdiction over Plaintiffs' claim. That section provides: "[n]otwithstanding any other provisions of law (statutory or nonstatutory) ... and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review ... any judgment regarding the granting of relief under section ... 1255 of this title ...." 8 U.S.C. § 1252(a)(2)(B)(i). Section 1255, in turn, allows the Attorney General, in his discretion, to adjust the status of "an alien who was inspected and admitted or paroled into the United States ... to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." 8 U.S.C. § 1255(a). According to Defendant, since Plaintiff is challenging the denial of his application for adjustment of status, and that the decision to deny such an application is expressly committed

to the discretion of the Attorney General by law, under §1252(a)(2)(B)(i) the Court does not have jurisdiction over Plaintiff's claim. The Court disagrees.

In this case, while Plaintiff is ultimately challenging the decision to deny his application for adjustment of status, his principle argument concerns the district director's determination that an immigrant visa was not immediately available to him at the time of his application. The district director's determination that a immigrant visa was not immediately available was a nondiscretionary legal determination of Plaintiff's eligibility for adjustment of status. *See Santana-Albarran v. Ashcroft*, 393 F.3d 699, 703 (6th Cir. 2005) (distinguishing between the director's nondiscretionary factual determinations of eligibility for adjustment of status and discretionary determinations of whether to adjust status once eligibility has been determined). "Non-discretionary actions ... and purely legal determinations made by the agency remain subject to judicial review." *Pinho v. Gonzales*, 432 F.3d 193, 204 (3d Cir. 2005). *See Billeke-Tolosa v. Ashcroft*, 385 F.3d 708, 711 (6th Cir. 2004) (stating that "[a] prohibition against review of a discretionary decision need not extend to non-discretionary decisions upon which the discretionary decision is predicated" and concluding that the court "may review the non-discretionary decisions that underlie determinations that are ultimately discretionary"). To put it another way, even though the end result of the director's decision was a denial of relief under § 1255, the decision being challenged was the legal determination that the CSPA did not apply to Plaintiff resulting in an immigrant visa being unavailable. *See Pilica v. Ashcroft*, 388 F.3d 941, 947-48 (6th Cir. 2004) (concluding that the court should examine the basis for the agency's decision rather than the ultimate result). As such, the Court retains jurisdiction to review the district director's application of the CSPA in deciding the statutory requirements for adjustment of status. *Billeke-Tolosa*, 385 F.3d at 711 (holding that the

court has jurisdiction to review nondiscretionary decisions that underlie ultimately discretionary determinations). *See also Sepulveda v. Gonzales*, 407 F.3d 59, 63 (2d Cir. 2005) (holding that the INA does not deprive the court of jurisdiction to review nondiscretionary statutory requirements to alien's application for adjustment of status); *Pilica*, 388 F.3d at 947-48 (holding that a decision that does not address the merits of a claim for relief is not a "judgment regarding the granting of relief" under § 1252(a)(2)(B)). Since the INA does not expressly deprive the Court of jurisdiction to determine this issue, the APA may provide a basis for the Court's jurisdiction.

Furthermore, the Court finds that the director's decision in this case was sufficiently final to invoke the Court's jurisdiction under the APA. *See* 5 U.S.C. § 704 (limiting review to "agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court ..."). The Sixth Circuit has held that "[t]o state a claim for relief under the APA, a plaintiff must allege that his or her injury stems from a final agency action for which there is no other adequate remedy in court." *Bangura v. Hansen*, 464 F.3d 487, 500 (6th Cir. 2006). "An action is final where it: (1) marks the 'consummation of the agency's decision making process;' and (2) determines rights and obligations or occasions legal consequences." *Id.* at 500-501 (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)).

The Court finds that under the circumstances in this case, the district director's decision to deny Plaintiff's application for adjustment of status constituted a final agency action for which there was no other adequate remedy in court. *See Pinho*, 432 F.3d at 200-203. Pursuant to 8 C.F.R. § 245.2(c), "no appeal shall lie" from the district director's denial of an application for adjustment of status. Thus, Plaintiff's only avenue of appeal would be to renew his application if the CIS were to commence removal proceedings against him. *See* 8 C.F.R. § 245.2(c) (providing the director's denial

is without prejudice "to the alien's right to renew his or her application in proceedings under 8 C.F.R. part 240"). In the present case no removal proceedings have been initiated. Accordingly, Plaintiff's ability to resubmit his application for adjustment of status before an immigration judge and the Board of Immigration Appeals is completely within Defendant's discretion. *See Pinho*, 432 F.3d at 202 (finding that the agency retained "sole control over whether an individual's purely legal claim ... may ever be brought before the courts"). Therefore, as the court in *Pinho* held, the district director's decision was final. Additionally, as in *Pinho*, there are legal consequences from the district director's denial in this case: because of the director's determination Plaintiff may be subject to removal and his application for employment authorization was denied. Therefore, the prerequisites to finality under the APA are established in this case and the Court may properly exercise jurisdiction over Plaintiff's claim.

**B. Failure to State a Claim**

Defendant argues that Plaintiff has failed to state a claim under the CSPA because the Act does not apply to the facts as pled in Plaintiff's complaint. The Court agrees. In order to qualify for an adjustment of status under 8 U.S.C. § 1255(a)(1), Plaintiff had to show, among other things, that an immigrant visa was immediately available to him. In order to make this showing, Plaintiff claimed an immigrant visa was immediately available because he was a child beneficiary of his mother's visa. Even though Plaintiff was twenty-one at the time his mother applied for an adjustment of status, and thus not a child under the INA, he nonetheless claimed he qualified as a child under the CSPA. The INA defines a child as "under twenty-one years of age ...." 8 U.S.C. § 1101(b)(1). Nevertheless, section 3 of the CSPA, 8 U.S.C. § 1153(h)(1)(A), allows certain aliens to adjust their status as children of lawful permanent residents even if they are no longer children as defined in the

8

INA. The purpose of the CSPA is to prevent children from "aging out" while their parents' applications for adjustment of status are pending.

Prior to the CSPA, an application for permanent residency as a child beneficiary would be approved only if adjudicated prior to the child turning twenty-one years of age. This resulted in children of immigrants being denied the benefit of their parent's legal status simply because they turned twenty-one after their parents applied for legal status but before the application was approved. The CSPA prevents this result in certain circumstances by changing the point at which a child's age is calculated for the purposes of benefitting from a parent's status. The CSPA provides: "a determination of whether an alien satisfies the age requirement ... shall be made using ... the age of the alien on the date on which an immigrant visa number becomes available for such alien (or ... the date on which an immigrant visa number became available for the alien's parent), but only if the alien has sought to acquire the status of an alien lawfully admitted for permanent residence within one year of such availability ...." 8 U.S.C. § 1153(h)(1)(A). In effect, the CSPA created a grace period for twenty-year-old children whose parents seek an adjustment of status within one year of their visa availability. As long as the parent files for an adjustment of status within one year from the day the parent is eligible to do so, the child's age will be frozen as of the same date the parent's visa became available.

Under the CSPA, Plaintiff would qualify to have his status adjusted if "(1) he was a child on the date upon which the immigrant visa became available to his [mother], (2) he applied for adjustment of status within one year of availability, and (3) he "aged out" while waiting for his application to be adjudicated." *Ochoa-Amaya v. Gonzales*, 479 F.3d 989, 992 (9th Cir. 2007) (quoting *Padash v. INS*, 358 F.3d 1161, 1167 (9th Cir. 2004)) (internal quotation marks omitted).

If the CSPA applied to Plaintiff, he would have benefitted from his mother's priority date of December 4, 1995, and a visa would have been immediately available on July 1, 2003. If the CSPA did not apply, Plaintiff could only receive a visa if his priority date was January 1, 1991, or earlier.

Based on the facts as pled, the Court concludes that Plaintiff has failed to state a claim upon which relief can be granted. The pleadings reveal that the CSPA never applied to Plaintiff. A visa became available for Plaintiff's mother on July 1, 2003. At that time, Plaintiff was nineteen years old. If Plaintiff's mother needed to use the CSPA for any of her children, she would have had to apply for an adjustment of status by June 30, 2004, at which time Plaintiff would have been twenty years old. Assuming that Plaintiff's mother applied for an adjustment of status prior to June 30, 2004, the CSPA's method for calculating the age of a child under the INA would not have applied because Plaintiff did not "age out" between the time his mother's visa became available and the time she applied for an adjustment of status. Thus, had Plaintiff's mother proceeded with the application she filed in August 2004, Plaintiff would have been able to adjust his status as his mother's child regardless of the CSPA.

However, Plaintiff's mother did not proceed with the application she filed in August 2004 and reapplied for an adjustment of status on June 2, 2005. At that time, Plaintiff was twenty-one years old and no longer a child under the INA or the CSPA. Furthermore, because the second application for an adjustment of status was filed more than one year after a visa became available for Plaintiff's mother on July 1, 2003, Plaintiff could not use the CSPA to freeze his age as of that date. *See* 8 U.S.C. § 1153(h)(1)(A) (requiring the parent to file an application within one year of a visa becoming available in order to benefit from the CSPA).

Under these facts, the CSPA cannot provide Plaintiff with relief. As Plaintiff was under

twenty-one for the entire year after his mother's visa became available, the CSPA's grace period never applied to his situation. Moreover, since Plaintiff's mother did not apply for her visa within one year of it becoming available, Plaintiff did not meet the legal requirements of the CSPA. Accordingly, Plaintiff has failed to state a claim upon which relief can be granted.

## V. CONCLUSION

Based on the pleadings and other documents properly considered in this case, the Court finds that the CSPA does not apply to Plaintiff. As such, Plaintiff's Motion for Summary Judgment is DENIED and Defendant's Motion to Dismiss is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's complaint is DISMISSED

IT IS SO ORDERED.

        s/Lawrence P. Zatkoff
        LAWRENCE P. ZATKOFF
        UNITED STATES DISTRICT JUDGE

Dated: June 14, 2007

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on June 14, 2007.

        s/Marie E. Verlinde
        Case Manager
        (810) 984-3290